R. A. Dotson, appellant, v. The City of Ames et al., appellees.

## No. 49902.

(Reported in 101 N.W.2d 711)

MARCH 8, 1960.

Joseph H. Buchanan, of Ames, for appellant.

Rex B. Gilchrist, City Attorney, of Ames, for appellees.

THOMPSON, J.—At all times material the plaintiff was the owner of 48.65 acres of land lying immediately west of, and outside, the city limits of the defendant-City; and of 28.20 acres immediately adjoining to the east, and so within the city limits. In the southeast corner of the latter tract, inside but immediately adjacent to the south corporation line of the city, the plaintiff had a fenced enclosure .625 acres in extent, in which he kept two horses. This enclosure was fully sodded and contained nothing offensive or objectionable except as the presence of animals might render it so.

At this time there was in force an ordinance of the City of Ames which we set out herewith:

"57-5 Public Nuisances. The following are hereby declared public nuisances and may be abated in the manner as herein provided.

"57-5.5 Keeping of Cattle, Horses, Sheep, or Swine. The keeping of any cattle, horses, sheep, goats, or swine within the city except in pens with dry floors or pens free from all filth

and standing water, or the keeping of the aforesaid animals in any pen or building within one hundred (100) feet of any well, or within two hundred (200) feet of a dwelling house occupied by a family other than the family of the owner of such animals, except by the consent of the head of such family, and the owner of such dwelling house is a public nuisance."

Then followed provisions for abatement of nuisances and for criminal penalties against those found to be in violation of the provisions of the ordinance. It is the above quoted parts of the ordinance which are under attack in the case before us. The trial court found the challenged portions of the ordinance valid, denied plaintiff's request for an injunction and, in effect, dismissed his petition.

I. The case was tried upon a stipulation of fact, in which it was agreed, among other items, that the issues raised were 1, whether plaintiff might avail himself of a declaratory-judgment action; 2, whether the equitable forum was available to plaintiff; and 3, whether the City of Ames had the right to enact and its officers to enforce those parts of the ordinance set out above. The trial court found the first two issues with the plaintiff. While the defendants might have supported the judgment by showing that the trial court erred in so doing, and so they were entitled to judgment even if the court was in error in its holding on the third point stated, they have not done so. They do not argue the propriety of the rulings on Points 1 and 2, and we give them no further consideration.

II. The contested point in the case is the validity of the ordinance as quoted. The arguments on this question have taken a considerable range, and the contentions of the opposing parties are ably presented. The stipulation on which the case was tried agrees that that portion of plaintiff's land outside the city limits is used for pasture, and raising hay and corn. Of the part within the corporation limits, 23.2 acres is divided. Approximately the south five acres is devoted to lawn, unmowed grass and residence; the remainder is in corn. The remaining five acres within the city limits is fenced, wooded grassland occasionally used for pasture. It is further stipulated that the acts performed by the plaintiff in keeping two horses in the .625

acre tract constitute a violation of the ordinance; presumably if it is valid and enforceable.

III. The plaintiff denies the power of the city to enact the ordinance in question. He says there is no showing that he was maintaining a nuisance per se; that nothing he has done in keeping two horses constitutes either a common-law nuisance or a nuisance under our statutes. The defendants meet this by the assertion they have the power to declare nuisances, for the protection of the public health, welfare and morals even though the matters so designated are not either common-law or statutory nuisances. We do not find it necessary to decide this question.

It is elementary that municipalities have only those powers expressly given them, those which arise from fair implication and those necessary to carry out powers expressly or impliedly granted. Stoner McCray System v. City of Des Moines, 247 Iowa 1313, 1322, 78 N.W.2d 843, 849, 58 A. L. R.2d 1304. It is also well settled that grants of power to municipalities are strictly construed against the authority claimed, and in case of reasonable doubt must be denied. City of Mason City v. Zerble, 250 Iowa 102, 108, 93 N.W.2d 94, 98; Gritton v. City of Des Moines, 247 Iowa 326, 331, 73 N.W.2d 813, 816. The authority claimed here for the enactment of the questioned ordinance is first the general nuisance statutes of Iowa. But there is no evidence which would bring it within these statutes. We cannot take judicial notice that two horses, kept in a pasture .625 of an acre in extent, are injurious to health or offensive to the senses, or occasion other annoyances, without something further.

We are next referred to the statutes defining the general powers of municipalities, particularly Code sections 366.1, 368.2 and 368.3. We quote section 368.3: "Nuisances. They shall have power to abate, restrain, or prohibit any nuisance, public or private, and provide for the assessment of the cost thereof against the property. Said power shall include the authority to abate all nuisances as defined in section 657.1 and in section 657.2 or in any other statutory enumeration." It is at this point that the defendants urge that cities and towns are given power to determine what are nuisances and whose abatement is a valid exercise of the police power. But we do

not reach this question here as they have presented it. It must be conceded that if the legislature has clearly indicated that certain powers are not granted, the municipality cannot claim them. We find in the same chapter 368 of the Code, which contains sections 368.2 and 368.3, supra, section 368.7, which says: "They [cities and towns] shall have power to restrain and prohibit: * * * 5. The running at large of cattle, horses, swine, sheep, and other animals, or fowl, within the limits of the corporation, and to authorize the distraining, impounding, and sale of the same, for the penalty incurred and the costs of the proceeding." It will be noted that this section deals only with animals running at large; there is no indication of any intent to authorize municipalities to interfere with the keeping of animals under restraint; that is, not running at large. We must accept the plaintiff's contention at this point.

The legislature had animals in mind when it enacted section 368.7(5), supra, and it seems clear that it meant to give cities and towns only the designated powers over them. A special statute such as this takes precedence and is to be followed over a general statute, such as sections 366.1, 368.2, and 368.3. Gade v. City of Waverly, 251 Iowa 473, 477, 101 N.W.2d 525, 527; State v. Flack, 251 Iowa 529, 101 N.W.2d 535; City of Mason City v. Zerble, supra, page 109 of 250 Iowa, page 98 of 93 N.W.2d; Shelby County Myrtue Memorial Hospital v. Harrison County, 249 Iowa 146, 152, 86 N.W.2d 104, 108, 109, and cases cited.

The situation in City of Mason City v. Zerble was much like the one here before us. The same chapter 368 of the Code, dealing with the powers granted cities and towns, was involved. In some sections the legislature had referred to the power to regulate, and in others to the power to regulate and license. We held the intent of the legislature that "regulate" does not include "license" was evident. In construing the meaning of a law we consider related acts dealing with the same subject matter. Manilla Community School District v. Halverson, 251 Iowa 496, 501, 101 N.W.2d 705, 708, and cases cited; City of Mason City v. Zerble, supra.

Another rule is important here. It is that the express mention of the one thing implies the exclusion of others. The

Latin phrase is "expressio unius est exclusio alterius." The owner of animals may keep them confined in barns, or pens, or pastures; or he may permit them to run at large. The latter alternative may be "restrained or prohibited" by municipalities, by express statutory provision. But nothing is said about the power to restrain or prohibit the keeping of animals when confined. It is only when they are running at large that the city or town may control them. The rule last above stated is fully applicable here; by granting control over animals running at large the legislature has clearly excluded power over those confined. Of course this rule would not apply if there was definite evidence of the creation of a nuisance; section 368.3, which authorizes abatement of nuisances, would then be a specific statute as applied to that situation. But we have said there is no evidence of an actual nuisance here.

We have applied the rule that expression of one thing implies the exclusion of others in State v. Flack, supra, 251 Iowa 529, 533, 101 N.W.2d 535, 538, where we said: "Thus the legislative intent is expressed by omission as well as by inclusion"; and in many other cases cited therein.

The defendants cite The State, by the City of Cedar Rapids, v. Holcomb, 68 Iowa 107, 26 N.W. 33, 56 Am. Rep. 853, in support of the validity of the ordinance. There we upheld a regulation of the board of health of the city, which prohibited the keeping of swine in pens except for purposes of commerce. The defendant kept one hog in a pen, which was not a nuisance; but it was not kept for commerce, and this court upheld the regulation, as a valid exercise of the police power. The opinion is short, and the question discussed above was apparently not raised or considered. So far as this case is in conflict with the views expressed in this division of our opinion it is overruled.

We conclude the City was without power to enact the ordinance.

IV. Another interesting question arises from plaintiff's contention that the ordinance contains an illegal delegation of power to near-by property owners and is discriminatory in that it permits them to say whether the keeping of animals is, or is not, a public nuisance. It appears that under this provision of the ordinance some citizens, who could obtain the consent of

their neighbors, might be permitted to keep animals while others, unable to obtain such permission, might not; and the question of public nuisance would be determined by such consent or lack thereof. However, in view of our holding in Division III we do not find it necessary to determine this and other challenges to the validity of the ordinance.

The case is reversed and remanded for decree in accordance with this opinion.—Reversed and remanded.

All JUSTICES concur.